The **CITY OF EL PASO,**
**et al., Petitioners,**

v.

**Lilli M. HEINRICH, Respondent.**

No. 06–0778.

Supreme Court of Texas.

Argued Nov. 13, 2007.

Decided May 1, 2009.

Jennifer F. Callan, Laura P. Gordon, Asst. City Attys., Michele Little Locke, John Lomax Anderson, El Paso, Eric G. Calhoun, Richard J. Pradarits Jr., Travis & Calhoun, P.C., Dallas, Robert D. Klausner, Stuart A. Kaufman, Klausner & Kaufman, P.A., Plantation, FL, for Petitioners.

Stewart W. Forbes, Forbes & Forbes, El Paso, for Respondent.

Philip Durst, Deats Durst Owen & Levy, P.L.L.C., Austin, for Amicus Curiae Texas State Association of Fire Fighters.

Kristofer S. Monson, Asst. Solicitor Gen., Austin, for Amicus Curiae State of Texas.

Chief Justice JEFFERSON delivered the opinion of the Court.

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). But "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). Today we examine the intersection of these two rules. We conclude that while governmental immunity

generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions. We affirm in part and reverse in part the court of appeals' judgment and remand this case to the trial court for further proceedings.

# I

## Background

Lilli M. Heinrich is the widow of Charles D. Heinrich, a member of the El Paso Police Department who died in August 1985 from wounds received in the line of duty. Shortly after Charles died, the El Paso Firemen & Policemen's Pension Fund began paying Heinrich monthly survivor benefits equal to 100% of the monthly pension her husband had earned.[1] The parties contest how those payments were apportioned. The City of El Paso, the El Paso Firemen & Policemen's Pension Fund ("the Fund"), the Fund's Board of Trustees ("the Board"), and the individual board members contend that the Fund's bylaws assigned only two-thirds of this payment to Heinrich, the other third being paid to her on behalf of her then-minor child. Heinrich, on the other hand, contends that, notwithstanding the bylaws, the Board voted to award her 100% of Charles' pension benefits in her own right, as more fully explained below.

Accordingly, when in 2002 the Board reduced the monthly payments to Heinrich by one-third after Heinrich's son turned 23, Heinrich filed this lawsuit, alleging that petitioners violated the statute governing the Fund by reducing her benefits retroactively. Heinrich sought both declaratory relief and an injunction restoring Heinrich to the "status quo from [the] date of the illegal act." Petitioners filed pleas to the jurisdiction asserting that governmental immunity shielded the governmental entities from suit and that the individual board members enjoyed official immunity. The trial court denied the pleas, and petitioners filed an interlocutory appeal.

The court of appeals affirmed, holding that "a party may bring a suit seeking declaratory relief against state officials who allegedly act without legal or statutory authority and such suit is not a 'suit against the state.'" 198 S.W.3d 400, 406. The court acknowledged that, if successful, Heinrich would be entitled to past and future benefits, but held that Heinrich's suit made a valid claim for her vested right to pension benefits rather than money damages. *Id.* at 407. We granted the petition for review in order to clarify the types of relief that may be sought without legislative consent.[2] 50 Tex. Sup.Ct. J. 910 (June 22, 2007).

# II

## Discussion

### A

### *Ultra Vires* Claims

Petitioners contend that although Heinrich requests declaratory and equitable relief, her claim is essentially for past and future money damages, and that governmental immunity therefore bars her suit. As we said in *Reata Construction Corp. v. City of Dallas,* "'[s]overeign immunity protects the State from lawsuits for money damages.' Political subdivisions of the state . . . are entitled to such immunity—

---

1. The City withheld a percentage of Charles's compensation (and that of other officers) to fund the plan.

2. The State of Texas and the Texas State Association of Fire Fighters submitted amicus curiae briefs.

referred to as governmental immunity—unless it has been waived." *Reata*, 197 S.W.3d 371, 374 (Tex.2006) (citations omitted); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). We have said repeatedly that the Legislature is in the best position to waive or abrogate immunity, "because this allows the Legislature to protect its policymaking function." *IT–Davy*, 74 S.W.3d at 854 (citations omitted) (collecting cases).

Heinrich concedes that the City, Fund, and Board enjoy governmental immunity from suit, but argues that because her claim alleges a reduction in her benefits that was unauthorized by law, it is not barred. This is so, she says, because "[p]rivate parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Id.* at 855 (citing *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law)); *see also Fed. Sign.*, 951 S.W.2d at 404 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.") (citations omitted). We explained the rationale behind this exception to governmental immunity in *Federal Sign*:

A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or pro-

tect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*Fed. Sign*, 951 S.W.2d at 404 (citations omitted).

 On this basis, Heinrich argues that rather than money damages, she seeks only equitable and injunctive relief under the Uniform Declaratory Judgment Act. That Act is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem.Code § 37.002(b). It provides: "A person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the ... statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). The Act, however, does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature.[3] *IT–Davy*, 74 S.W.3d

---

**3.** We recently dismissed a claim for declaratory and injunctive relief against the Houston Municipal Employees Pension System in which the "plaintiffs ... requested that the trial court issue an injunction directing the pension board to comply with the trial court's interpretation of Article 6243h," the governing statute. *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158–59 (Tex.2007). Under Article 6243h, the Houston board's "interpretation of [the] Act [is] final and binding on any interested party," Tex Rev.Civ. Stat. art. 6243h § 2(y), and we held that this language precluded judicial re-

view. *Ferrell*, 248 S.W.3d at 158 ("There is no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right.") (citations omitted). Here, however, Article 6243b contains no language similar to that in 6243h granting the Board exclusive authority to interpret the act, *see* Tex.Rev.Civ. Stat. art. 6243b, and, in any case, Heinrich does not challenge petitioners' interpretation of 6243b, but rather alleges that they have violated that statute under an undisputed reading thereof. *See Ferrell*, 248 S.W.3d at 160 (Brister, J., concurring) ("A different case

at 855; *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994). It is well settled that "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages ... as a declaratory-judgment claim." *IT–Davy,* 74 S.W.3d at 856 (citing *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 842 (1958)).

■ Heinrich relies on *State v. Epperson,* 121 Tex. 80, 42 S.W.2d 228, 231 (1931), in which we held that a suit against a tax collector for the recovery of money (alleged to be due under a contract and withheld unlawfully) was not barred by immunity. There, we noted that the tax collector had no discretion under the governing law to deny payment on Epperson's contract:

> By legislative act the state has constituted the tax collector of the county its agent to receive delinquent taxes collected under such contract, and it is the duty of such officer to pay all fees and commissions lawfully incurred in the collection thereof to the various parties who may be entitled thereto. Under such circumstances, the tax collector's duty with reference to money belonging to persons who are entitled under valid contracts to receive the same from him is purely ministerial. If he withholds the payment of such funds when a person is lawfully entitled to receive same, he has failed to discharge a duty imposed upon him by law and his act is a wrongful one.

*Epperson,* 42 S.W.2d at 231. We therefore concluded that although the trial court would "not possess jurisdiction to enforce the specific performance of the contract relied upon by Epperson or to award damages for any breach of said contract," Epperson's suit was "simply an action to compel an officer, as agent of the state, to pay over funds to a party who claims to be lawfully entitled thereto." *Id.*

Thus, the rule arising out of *Epperson* is that while suits for contract damages against the state are generally barred by immunity, where a statute or the constitution requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government official's violation of that law is not barred, even though it necessarily involves a contract. We explained this distinction in *W.D. Haden Co. v. Dodgen*:

> [A]lthough [*Epperson* ] ar[ose] out of [ ] contract transaction ... [it] appears to fall into the class of cases projected by *United States v. Lee,* [106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171· (1882) ].[4] In that class of cases it is held that suits for property alleged to be unlawfully or wrongfully withheld from the rightful owner by officers of the state are not suits against the sovereign itself and may be maintained without permission of the sovereign.

158 Tex. 74, 308 S.W.2d 838, 841 (1958). In other words, where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments. This rule is generally consistent with the letter and spirit of our later caselaw. In *IT–Davy,* we distinguished permissible declaratory-judgment suits against state offi-

---

might be presented if the plaintiffs alleged the board was clearly violating some provision of the statute. Article 6243h gives the pension board complete discretion to interpret the statute, but not to violate it.").

4. The *Dodgen* Court expressly declined to limit *Epperson* based on changes in federal immunity jurisprudence. *Dodgen,* 308 S.W.2d at 843.

cials "allegedly act[ing] without legal or statutory authority" from those barred by immunity: "In contrast [to suits not implicating sovereign immunity], declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. *That is because such suits attempt to control state action by imposing liability on the State.*" 74 S.W.3d at 855–56 (citations omitted) (emphasis added).

█ From this rationale, it is clear that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money. To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Compare Epperson,* 42 S.W.2d at 231 ("the tax collector's duty ... is purely ministerial") *with Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 706 (Tex.2003) (newly elected commissioners court immune from suit where it "acted within its discretion to protect the perceived interests of the public" in rejecting contract approved by predecessor), *and Dodgen,* 308 S.W.2d at 842 (suit seeking "enforcement of contract rights" barred by immunity in the absence of any "statutory provision governing or limiting the manner of sale"). Thus, *ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state.[5] Stated another way, these suits do not seek to alter gov-

ernment policy but rather to enforce existing policy.

Further, while "[a] lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits ... rather than using those resources for their intended purposes," *Reata Constr. Corp.,* 197 S.W.3d at 375, this reasoning has not been extended to *ultra vires* suits, *see Fed. Sign,* 951 S.W.2d at 404 (citing *Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.,* 600 S.W.2d 264, 265–66 (Tex.1980) (legislative consent not required for suit for injunctive relief against state agency to halt unauthorized printing equipment and printing activities), *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.,* 372 S.W.2d 525, 530 (Tex.1963) (legislative consent not required for declaratory judgment suit against Highway Commission to determine the parties' rights), and *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (legislative consent not required for declaratory judgment suit against State Comptroller to determine parties' rights under tax statute)). Further, extending immunity to officials using state resources in violation of the law would not be an efficient way of ensuring those resources are spent as intended. This is particularly true since, as discussed below, suits that lack merit may be speedily disposed of by a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

### B

### Proper Parties

█ Nonetheless, as a technical matter, the governmental entities themselves—as opposed to their officers in

---

**5.** Because the policy embodied in the law extends only as far the amount wrongfully withheld, claims for amounts beyond those alleged to be due under the relevant law, such as consequential damages, remain barred by immunity.

their official capacity—remain immune from suit. We have been less than clear regarding the permissible use of a declaratory remedy in this type of *ultra vires* suit.[6] Must it be brought directly against the state or its subdivisions? Or must it be brought against the relevant government actors in their official capacity? *Compare Fed. Sign,* 951 S.W.2d at 404 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.") (citations omitted), *with IT–Davy,* 74 S.W.3d at 855 ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.") (citations omitted). It seems to us, however, that because the rule that *ultra vires* suits are not "suit[s] against the State within the rule of immunity of the State from suit" derives from the premise that the "acts of officials which are not lawfully authorized are not acts of the State," *Cobb,* 190 S.W.2d at 712, it follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their

official capacity.[7] This is true even though the suit is, for all practical purposes, against the state. *See Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."); *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex.2007) ("It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.' ") (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

## C

### Permissible Relief

█ But the *ultra vires* rule is subject to important qualifications. Even if such a claim may be brought, the remedy may implicate immunity. *Cf.* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (under fed-

---

**6.** For claims challenging the validity of ordinances or statutes, however, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity. TEX. CIV. PRAC. & REM. CODE § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."); *see Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697–698 (Tex.2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity."); *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994) ("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must

be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements."). Here, Heinrich is not challenging the validity of the bylaws or the governing statute, but rather petitioners' actions under them.

**7.** State officials may, of course, be sued in both their official and individual capacities. Judgments against state officials in their individual capacities will not bind the state. *See Alden v. Maine,* 527 U.S. 706, 757, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.").

eral immunity law, an *ultra vires* suit may be brought but "if the defendant is a state officer, sovereign immunity bars the recovery of damages from the state treasury in a private suit"). This is a curious situation: the basis for the *ultra vires* rule is that a government official is not following the law, so that immunity is not implicated, but because the suit is, for all practical purposes, against the state, its remedies must be limited. *Cf. Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 685, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) ("There is a well-recognized irony in *Ex parte Young*; unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the State for purposes of the Eleventh."). We recently held that retired firefighters could not pursue a declaratory judgment action against the City to recover amounts allegedly previously withheld from lump-sum termination payments in violation of the Local Government Code. *City of Houston v. Williams*, 216 S.W.3d 827, 828 (Tex.2007). Without discussing *Epperson*, we applied the rule from *IT–Davy* and *Dodgen* that the declaratory judgment act cannot be used to circumvent immunity, noting that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages." *Id.* at 829. *Williams* stands for the proposition, then, that retrospective monetary claims are generally barred by immunity.

We also stated that "in every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived." *Id.* This does not mean, however, that a judgment that involves the payment of money necessarily implicates immunity. Drawing the line at monetary relief is itself problematic, as "[i]t does not take much lawyerly inventiveness to convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid, or for an order reversing the agency's decision not to pay." *Bowen v. Massachusetts*, 487 U.S. 879, 915–16, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting) (discussing section 702 of the Administrative Procedure Act, which waives sovereign immunity in actions against federal agencies as long as the plaintiff seeks "relief other than money damages") (quoting 5 U.S.C. 702 (2000)).

Parsing categories of permissible relief in cases implicating immunity inevitably involves compromise. *See, e.g.*, DOUGLAS LAYCOCK, MODERN AMERICAN REMEDIES 482 (3d ed. 2002) ("The law of remedies against governments and government officials is a vast and complex body of doctrine, full of technical distinctions, fictional explanations, and contested compromises."). The United States Supreme Court has held that, under federal immunity law, claims for prospective injunctive relief are permissible, while claims for retroactive relief are not, as such an award is "in practical effect indistinguishable in many aspects from an award of damages against the State." *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This rule originated in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which the Court held that an action to restrain a government official from unconstitutional conduct was not barred by immunity. Later, in *Edelman*, the Court recognized that the distinction between prospective and retrospective relief "will not in many instances be that between day and night" and cautioned that a fiscal impact on the

State did not necessarily implicate immunity:

> The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young.* In *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra.*

*Id.* at 667–68, 94 S.Ct. 1347 (footnote omitted). The retroactive portion of the *Edelman* district court's decree was different, however, as "[i]t require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard." *Id.* at 668, 94 S.Ct. 1347.

While "[t]he line between prospective and retrospective remedies is neither self-evident nor self-executing," LAYCOCK, MODERN AMERICAN REMEDIES at 483, the Supreme Court shed further light on the issue in *Milliken v. Bradley,* 433 U.S. 267, 269, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), a case involving desegregation of the Detroit school system. The Supreme Court upheld a trial court's order requiring state officials to spend $6 million on education to remedy effects of segregation. *Milliken,* 433 U.S. at 290, 97 S.Ct. 2749. The Court held that this relief was permissible under *Edelman:* "That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system." *Id.*; *see also* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 (noting that, under *Edelman,* "[i]njunctions requiring expenditure of state funds are acceptable, so long as the order is prospective" but "[r]etroactive relief, including compensatory damages from state funds are barred").

This compromise between prospective and retroactive relief, while imperfect, best balances the government's immunity with the public's right to redress in cases involving *ultra vires* actions, and this distinction "appear[s] in the immunity of the United States, and in the law of most states' immunity from state-law claims." LAYCOCK, MODERN AMERICAN REMEDIES at 482. It also comports with the modern justification for immunity: protecting the public fisc. *Tooke v. City of Mexia,* 197

S.W.3d 325, 331–32 (Tex.2006) (observing that immunity "shield[s] the public from the costs and consequences of improvident actions of their governments"); *Federal Sign*, 951 S.W.2d at 417 (Enoch, J., dissenting) (noting that suits against the state would deplete treasury resources and tax funds necessary to operate the government). Moreover, it is generally consistent with the way our courts of appeals have interpreted *Williams*. *See, e.g., City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633–34 (Tex.App.-Austin 2007, pet. denied) (approving, under *Williams,* dichotomy between declaratory and injunctive claims regarding past statutory violations and those seeking only to compel the city to follow the law in the future; the government was immune from the former but not the latter); *Bell v. City of Grand Prairie,* 221 S.W.3d 317, 325 (Tex.App.-Dallas 2007, no pet.) (holding that, under *Williams,* firefighters' requested declaration regarding past statutory violation was barred, but to the extent the requested declaration concerned future violations, the claim was not barred, providing the firefighters did not seek an award of money damages). And finally, it ensures that statutes specifically directing payment, like any other statute, can be judicially enforced going forward.

■ This approach is inconsistent with *Epperson,* however, in which we held that, if successful, Epperson would be entitled to "the sum of $93,000 which belonged to him as his commission for services rendered." *Epperson,* 42 S.W.2d at 229. In that respect, *Epperson* conflicts with *Williams,* in which we implied that prospective remedies might not be barred even though retrospective monetary ones were. *Williams,* 216 S.W.3d at 829 (noting that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages" and that

"they assert no right to payments from the City in the future"). The best way to resolve this conflict is to follow the rule, outlined above, that a claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief, as measured from the date of injunction. *Cf. Edelman,* 415 U.S. at 669, 94 S.Ct. 1347 (using entry of injunction to distinguish retrospective from prospective relief). Thus, while the *ultra vires* rule remains the law, *see Federal Sign,* 951 S.W.2d at 404, *Epperson's* retrospective remedy does not.

■ But this rule is not absolute. For example, a claimant who successfully proves a takings claim would be entitled to compensation, and the claim would not be barred by immunity even though the judgment would require the government to pay money for property previously taken. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001) (noting that governmental immunity "does not shield the State from an action for compensation under the takings clause"); *cf.* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 ("If the state cannot invoke its immunity, retroactive relief against it is allowed.").

■ Heinrich has not alleged a takings claim. In the trial court, Heinrich alleged only that "a suit for equitable relief against a governmental entity for violation of a provision of the Texas Bill of Rights is excepted from ... sovereign immunity under Texas Constitution article [I], section 29" without specifying which provision of the Bill of Rights had been violated. In the court of appeals, however, she clarified that her constitutional complaint was a "violation of Article 1, section 16." TEX. CONST. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). Petitioners contend that she waived this argument by failing to

raise it in the trial court. *See Tex. Dep't of Protective & Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 861 (Tex.2001) (" '[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.' "") (citations omitted). Even if Heinrich's constitutional argument was properly presented, however, it has no merit. Heinrich does not challenge the governing statute or bylaws, but rather the Board's actions under those provisions. Indeed, Heinrich argues that "[t]he Pension Board and its individual members acted outside their authority and in violation of the Texas Constitution when they reduced [Heinrich's] benefits." Because Heinrich does not allege that any law sanctioned the retroactive reduction in her benefits, her constitutional argument fails.[8]

As we have repeatedly noted, the Legislature is best positioned to waive immunity, and it can authorize retrospective relief if appropriate. *See, e.g.,* TEX. LOCAL GOV'T CODE § 180.006 (enacted after *Williams* and waiving immunity for firefighter and police officer claims for back pay and civil penalties). There are cases in which prospective relief is inadequate to make the plaintiff whole, but the contours of the appropriate remedy must be determined by the Legislature.

Thus, Heinrich's claims for prospective relief may be brought only against the appropriate officials in their official capacity, and her statutory claims for future benefits against the City, Fund, and Board

must be dismissed.[9] Heinrich's pleadings are unclear as to the capacity or capacities in which she has sued the individual Board members. The United States Supreme Court has observed that, "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004). In these cases, " '[t]he course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099 (citations omitted). Here, the injunctive relief Heinrich seeks would necessarily come from the Board, rather than the individual members. Considering "the nature of the liability sought to be imposed," *id.,* and construing Heinrich's pleadings liberally, *Miranda,* 133 S.W.3d at 226, we conclude that she has sued the Board members in their official capacities, and her claims are therefore not automatically barred by immunity.[10] To the extent that the court of appeals held that the suit is against the Board members in their individual capacities, we reverse that portion of its judgment.

### D

### Evidence That Petitioners Acted *Ultra Vires*

■ In their second issue, petitioners argue that governmental immunity prohib-

---

**8.** Further, although the parties do not address it, we note that the reduction in Heinrich's survivor payments occurred before the effective date of article XVI, section 66 of the Texas Constitution ("Protected Benefits Under Certain Public Retirement Systems"), and we do not consider whether it would otherwise apply in this case.

**9.** While this case was pending on interlocutory appeal, the Legislature enacted 271.151–.160 of the Local Government Code, waiving

immunity from suit for certain claims against cities and other governmental entities. Heinrich does not argue that her claims fall within these provisions, and we express no opinion on that subject.

**10.** Because the mayor of El Paso, who is also a Board member, was named as a defendant in his official capacity, Heinrich may seek liability from the City through that officer, although her claims against the City itself must be dismissed.

its Heinrich's suit because Heinrich has offered no evidence that the reduction in her benefits was illegal or unauthorized. We conclude, however, that Heinrich has presented evidence raising a fact question on this issue.

 "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda,* 133 S.W.3d at 226 (citations omitted). Here, Heinrich alleges that petitioners violated article 6243b, section 10A(b) of the Texas Revised Civil Statutes when they reduced her benefits. Thus, if Heinrich's allegations are true, her suit would fall within the *ultra vires* exception to governmental immunity as described above.

 This is not the end of our analysis, however: "if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227. If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder. *Id.* at 227–28. This standard mirrors our review of summary judgments, and we therefore take as true all evidence favorable to Heinrich, indulging every reasonable inference and resolving any doubts in her favor. *Id.* at 228.

Petitioners argue that, in accordance with the governing bylaws, the payments to Heinrich were reduced when her son ceased to be eligible to receive them, and asserts that the statutory provisions Heinrich relies upon are "inapplicable." Conversely, Heinrich alleges that she was awarded 100% of her husband's pension in accordance with these provisions, and that petitioners' subsequent retroactive reduction of her benefits violated, among others, article 6243b, section 10A(a)(1) of the Texas Revised Civil Statutes. The relevant portions of article 6243b, section 10A provide:

(a) Notwithstanding anything to the contrary in other parts of this Act and subject to Subsections (b) and (c) of this section, the Board of Trustees may, by majority vote of the whole board, make from time to time one or more of the following changes, or modifications:

(1) modify or change prospectively or retroactively in any manner whatsoever any of the benefits provided by this Act, except that *any retroactive change or modification shall only increase pensions or benefits;*

* * *

(b) None of the changes made under Subsection (a) of this section may be made unless all of the following conditions are sequentially complied with:

(1) the change must be approved by a qualified actuary selected by a four-fifths vote of the Board; the actuary's approval must be based on an actuarial finding that the change is supported by the existing funding status of the fund; the actuary, if an individual, must be a Fellow of the Society of Actuaries or a Fellow of the Conference of Actuaries in Public Practice or a Member of the American Academy of Actuaries; the actuary, if an actuarial consulting firm, must be established in the business of providing actuarial consulting services to pension plans and *have experienced personnel able to provide the requested*

services; the findings upon which the properly selected and qualified actuary's approval are based are not subject to judicial review;

(2) the change must be approved by a majority of all persons then making contributions to the fund as employees of a department to which the change would directly apply, voting by secret ballot at an election held after ten (10) days' notice given by posting at a prominent place in every station or substation of a department to which the change would directly apply and in the city hall;

TEX.REV.CIV. STAT. art. 6243b, § 10A (emphasis added). Under this statute, while benefits may be increased if certain procedures are followed, the Board has no discretion to retroactively lower pensions. Petitioners, however, cite the provisions of the 1980 bylaws, under which the reduction would be proper due to Heinrich's son's age. They therefore suggest that Heinrich erroneously relies on 1985 changes to the bylaws that increased the surviving spouse's share but were prospective only in nature and do not apply to Heinrich.

Heinrich submitted an affidavit from John Batoon, former Assistant City Attorney for El Paso.[11] Batoon's affidavit provided:

> I was serving as an Assistant City Attorney for the City of El Paso in 1985. I reviewed and approved the award to Ms. Lilli M. Heinrich of 100% of her deceased husband's, Charles D. Heinrich, benefits from The El Paso Firemen & Policemen's Pension Fund. All procedures were followed according to the Plan and according to law. The membership voted and approved of the benefits awarded Ms. Heinrich as was required by the Plan. Because Mr. Heinrich had been an outstanding police officer for the City of El Paso and because he was killed in the line of duty, the Board of Trustees and the membership voted to award Ms. Heinrich 100% of Mr. Heinrich's benefits.

> Consideration of the amount of benefits awarded Ms. Heinrich was not based, in any way, on the fact that she had a minor child at that time. Ms. Heinrich was awarded 100% of the benefits because Mr. Heinrich had been a well-loved officer and his death was a terrible loss for the police department. It was the Board of Trustees and the membership's way of paying tribute to a fallen officer.

Along with this sworn testimony, the evidence included a pair of October 16, 1985 letters from the chief of police, one signed by the then-Board members, stating that "Mrs. Heinrich will receive 100% of her husband's final pension amount," and one unsigned, stating that 100% would go to "Mrs. Heinrich and her dependent children." The minutes of the November 20, 1985 Board meeting also indicate that the membership had previously voted to change benefits so that surviving spouses' benefits would increase from 66 2/3 to 100% of the pension amount. The Board contends that these bylaw changes do not apply to Heinrich, but even if they do not, Batoon's affidavit and the letters raise a fact question as to whether Heinrich's individual benefits were increased to 100% of her husband's pension payments under the provisions of article 6243b and subsequently reduced in violation thereof. We conclude that the trial court correctly denied that portion of the plea to the jurisdiction

---

11. The Fund, the Board, and the Board members objected to this evidence. The trial court did not explicitly rule on the objections, and the petitioners do not raise any evidentiary issues on appeal.

challenging Heinrich's claims against the individuals in their official capacities. *Miranda*, 133 S.W.3d at 227–28.

## E

### The Individuals' Immunity

In their final issue, petitioners assert that the trial court erred in denying the individual board members' plea to the jurisdiction based on governmental and official immunity. With the limited *ultra vires* exception discussed above, governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers. *See Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 776 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Because of this exception, however, governmental immunity does not bar Heinrich's claims against the individuals in their official capacities. Official immunity, by contrast, is an affirmative defense protecting public officials from individual liability. *See Telthorster v. Tennell*, 92 S.W.3d 457, 459–60 (Tex.2002). Because we hold that Heinrich has not sued the Board members in their individual capacities, official immunity is inapplicable here.[12]

## III

### Conclusion

In sum, because there is a question of fact as to whether Heinrich's pension payments have been reduced in violation of state law, her claims for prospective declaratory and injunctive relief against the Board members and the mayor in their official capacities may go forward, but we dismiss her retrospective claims against them. All of her claims against the City, Fund, and Board, however, are barred by governmental immunity, and we dismiss them. Finally, we hold that the Board members have not been sued in their individual capacities, and to the extent the court of appeals held otherwise, we reverse its judgment. We affirm in part and reverse in part the court of appeals' judgment and remand this case to the trial court for further proceedings. TEX.R.APP. P. 60.2(a),(d).

---

**12.** The court of appeals failed to draw this distinction, instead discussing the protections available to officials from governmental immunity. 198 S.W.3d at 407. This conflict gives us jurisdiction over this interlocutory appeal. TEX GOV'T CODE § 22.225(c), (e).