**Concurring opinion issued July 29, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01115-CV

————————————

## THE BOARD OF TRUSTEES OF THE GALVESTON WHARVES, Appellant

## V.

## E.L. O'ROURKE, Appellee

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. 61873**

---

## CONCURRING OPINION

When the Court's opinion issued on May 30, 2013, my study of the case was still on-going and I had sufficiently grave reservations regarding the resulting disposition that I voted to dissent, with my dissent to follow. I have since

concluded that I concur in the judgment of the Court despite Mr. O'Rourke being left without a remedy for having been assaulted, targeted and maligned. As pleaded, his is the "you can't get there from here" dilemma.

The majority opinion's very first sentence of the "Background" section describes appellee E. L. "Ted" O'Rourke as, "president [*sic*] of the International Longshoremen's Association Local 20" (ILA), who "has a history of altercations with the Port of Galveston Police Department." Not only is such a shadowy cast of O'Rourke (a 34 year member of the ILA, he was elected as the Local's President eleven years ago) uncalled for, the record reflects that it was an assault upon O'Rourke by Port Police Officer Perkins that gives rise to this case.[1] Indeed, there is a history, but it is a history of harassment of O'Rourke and Local 20 members by Galveston City police officers working at the Port or Port Policemen themselves (including Officer Perkins), dating from 2002 when O'Rourke intervened on behalf of porters (who handle luggage from cruise lines that enter the Port) being stopped by the Port Police on pretext stops in order to "persuade" them to kick-back some of the tip money the porters received from the passengers. When O'Rourke demanded such "shake downs" cease, the Port Police took note and intimidation commenced soon thereafter (January 2003) when O'Rourke was given a parking ticket, despite his car being parked *off* Port property and legally parked.

---

[1] Perkins had been subject of nine prior complaints for which he was never disciplined.

2

The next interchange between Perkins and O'Rourke was December 2, 2007, when Perkins ticketed O'Rourke's car. Believing he was legally parked, O'Rourke sought an explanation of the violation from Perkins, whose response was "You remember what you did to me" (referencing the porter "shake-down" episode). O'Rourke avers that this exchange resulted in Perkins grabbing his neck and pinning him against a bus.

O'Rourke's Original Petition made claims against governmental entities as well as individuals. He ultimately abandoned his intentional tort claims against the individuals and sought non-monetary declaratory and injunctive relief against the Wharves that would a) stop surveillance focused upon him when at the Port; b) acknowledge Perkins's misconduct and discipline him for it; and c) end targeted surveillance of anyone else. As actions comprising "illegalities or conduct outside of Appellants' statutory authority," these requests for declaratory and injunctive relief fall within the ultra vires exception to governmental immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). The ultra vires exception, however, only applies to individual state actors, and as such, the Wharves were entitled to dismissal of these claims. *See id*. at 372–73. Threading the needle in such cases is increasingly difficult, and pursuit of declaratory and injunctive relief against the individual state actors in their official capacities, as opposed to the

3

governmental entity, may have been the only means to survive the plea to the jurisdiction.

## Conclusion

Accordingly, I concur in the judgment.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, concurring.