

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-16-00270-CV and 07-18-00274-CV

ALBERT V. JESSEP, APPELLANT

V.

DEBBIE OTTOSON, IN HER OFFICIAL AND INDIVIDUAL CAPACITY AS FORMER OR PRESENT EMPLOYEE OF THE POTTER COUNTY COMMUNITY SUPERVISION AND CORRECTIONS DEPARTMENT; AND TERRY EASTERLING, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY AS DIRECTOR OF THE POTTER COUNTY COMMUNITY SUPERVISION AND CORRECTIONS DEPARTMENT, APPELLEES

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 104609-A, Honorable Edward Lee Self, Presiding

July 24, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Albert V. Jessep for several years has sought relief from what he contends is an erroneous sex offender risk assessment assigned him in 2006 by the Potter County Community Supervision and Corrections Department. In this current suit, appearing pro se, he sued Department employees, appellees Debbie Ottoson and Terry Easterling, for money damages in tort, declaratory relief, and redetermination of his sex

offender risk calculation.[1]  The 2006 determination was allegedly made by Ottoson while she and Easterling were employed with the Department.  The trial court partially sustained Ottoson and Easterling's plea to the jurisdiction based on governmental immunity and granted their motion for summary judgment.  We will sever, reverse and remand Jessep's request for recalculation of his sex offender risk level.  Otherwise, we will affirm the judgment of the trial court.

## Background

Jessep's computer was seized by peace officers while it was being repaired at an Amarillo computer shop.  The computer's hard drive contained pornographic images involving children.  By two July 2005 indictments filed in the 47th District Court of Potter County, he was charged with two possession-of-child-pornography offenses.  In April 2006, Jessep plead guilty to each offense.  The trial court deferred adjudication of guilt and placed him on community supervision for a period of five years.  A condition of community supervision required that Jessep register as a sex offender.[2]  He was assigned a "level two" or "moderate" sex offender risk level.[3]  According to Jessep, he was released from community supervision in April 2011.[4]

---

[1] Jessep's original petition also named Potter County but by amended petition he nonsuited the county.

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (West 2018).

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 62.007(c)(2) and 62.053(c) (West 2018) (court pronouncing sentence shall determine numeric risk level using screening tool under article 62.007).

[4] This statement of facts is taken from our opinion in *Jessep v. Potter County Cmty. Supervision & Corr. Dep't,* No. 07-13-00266-CV, 2015 Tex. App. LEXIS 6349, at *2 (Tex. App.—Amarillo Jun. 23, 2015, no pet.) (mem. op.).

Analysis

Through three issues, which we will discuss jointly, Jessep challenges the trial court's judgment.

Defendants' Capacities

Jessep's trial court pleadings contain statements that his claims are brought against Ottoson and Easterling in their official and individual capacities. The gist of Jessep's complaint against Ottoson is that as a community supervision officer she assigned him an incorrect numeric risk level by using the wrong sex offender screening tool and then published the allegedly erroneous risk level to the Texas Department of Public Safety (DPS) which posts it on the worldwide web. Jessep charged Ottoson with negligence, and also claimed defamation. Jessep's complaints against Easterling, as community supervision department director, concerned his alleged failure to supervise Ottoson correctly and to formulate proper departmental policy. Jessep alleged Easterling also defamed him.

As appellees' plea to the jurisdiction pointed out, all of Ottoson's alleged actions were taken in connection with her duties as a community supervision employee. We think it is undisputed that the same is true for the conduct Jessep's pleadings attribute to Easterling. Considering the substance of his pleadings, and despite his references to the defendants' individual capacities,[5] we find that all Jessep's claims alleged against Ottoson and Easterling are brought against them in their official capacities.

---

[5] In his brief in this Court, Jessep explains that he sued the two in their individual capacities because he claims some of their actions were ultra vires. But in Texas, ultra

3

Governmental Immunity

In their plea to the jurisdiction, Ottoson and Easterling sought dismissal of Jessep's entire case. The trial court sustained appellees' plea to the jurisdiction as to claims it found to be barred by governmental immunity.

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008). "[Governmental] immunity from suit defeats a trial court's subject matter jurisdiction . . . ." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004). A plea to the jurisdiction is a dilatory plea functioning to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Because the existence of the trial court's jurisdiction is a question of law, we review de novo the ruling of a trial court on a plea to the jurisdiction. *Houston Mun. Emps. Pension Sys. v. Ferrell,* 248 S.W.3d 151, 156 (Tex. 2007). A plea to the jurisdiction may challenge the sufficiency of the facts pleaded in a petition or it may challenge the existence of jurisdictional facts. *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Miranda*, 133 S.W.3d at 226-27). Review of the trial court's ruling on a plea to the jurisdiction begins with the live

---

vires suits are brought against state actors in their official capacities. *See, e.g., Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 76 (Tex. 2015) (citing *City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 (Tex. 2009)).

pleadings. *Miranda,* 133 S.W.3d at 226. A plaintiff must affirmatively demonstrate the trial court's jurisdiction. *Id.*

A suit against a government employee in his official capacity is fundamentally a suit against his government employer and not a suit against the individual. *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex. App.—Austin 2007, no pet.). "If an individual is sued in his official capacity, the employee may raise any defense that would be available to his employer, including the defense of sovereign immunity." *Id.* (citations omitted); *see Newman v. Bryan*, No. 06-13-00063-CV, 2013 Tex. App. LEXIS 12492, at *8 (Tex. App.—Texarkana Oct. 9, 2013, no pet.) (mem. op.) (same). *See also Heinrich*, 284 S.W.3d at 380 (subject to ultra vires exception, governmental immunity protects governmental officers sued in their official capacities "to the extent that it protects their employers").

Jessep's claims seeking money damages sound in tort. The Texas Tort Claims Act provides a limited waiver of governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.023, 101.025 (West 2011). The Tort Claims Act waives governmental immunity in three general areas: use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of tangible personal or real property. *See Texas DOT v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

None of Jessep's claims involve operation or use of a vehicle or equipment, a premises defect, or the condition or use of tangible personal or real property. The immunity of governmental units has not been waived for the money-damage claims Jessep has asserted against the defendants. Because Ottoson and Easterling were entitled to raise the defense of governmental immunity, we conclude the trial court did not

err by granting their plea to the jurisdiction as to Jessep's claims for money damages. Our conclusion includes all Jessep's claims for damages in tort including the allegedly defamatory act of providing information to DPS for dissemination on the worldwide web.[6] It includes also Jessep's ultra vires claim to the extent it sought money damages. *See Heinrich*, 284 S.W.3d at 373-74 (under ultra vires rule, remedy sought may implicate immunity). It further includes Jessep's claim for declaratory relief to the extent the declarations sought were in aid of the recovery of money damages. *See id.* at 371 ("well settled" that private parties cannot circumvent sovereign immunity by characterizing suit for money damages as declaratory-judgment claim) (internal citation and quotation omitted).[7]

In the face of a plea to the jurisdiction, a plaintiff deserves "a reasonable opportunity to amend unless the pleadings affirmatively negate the existence of jurisdiction." *Texas A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839 (Tex. 2007) (citation omitted). In this case, it would be futile for Jessep to replead his claims for money damages because they are incurably jurisdictionally defective. *See id.* at 846.[8]

---

[6] As to Jessep's claims for damages for defamation, we note also that the Tort Claims Act does not waive immunity for claims arising out of intentional torts. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (West 2011).

[7] The trial court granted appellees' motion for summary judgment on a limitations ground. Because we have concluded that appellees are immune from suit for damages for the tortious conduct Jessep alleged, we need not consider whether Jessep's claims of damages caused by the allegedly tortious conduct of appellees are barred by the statute of limitations. *See* TEX. R. APP. P. 47.1.

[8] The statutory provisions for sex offender risk assessments contain their own grant of immunity from liability for "good faith conduct," applicable to employees and officers of a community supervision and corrections department. *See* TEX. CODE CRIM. PROC. ANN. art. 62.008 (West 2018). That provision is not involved in this appeal.

Claim for Correction of Risk Assessment

In his supplemental response to appellees' motion for summary judgment and plea to the jurisdiction, Jessep made clear that his claims for damages were ancillary to his effort to have the court correct his sex offender risk level. Jessep's focus, and that of appellees, in the trial court and here on appeal in this suit has been his claims for damages and related declaratory relief. His request for reduction of his risk assessment level was relegated to one sentence in the prayer of his petition[9] where it was dismissed by the trial court under the plea to the jurisdiction.

On the record presented, we are unable to see a jurisdictional bar to the authority of the 47th District Court to consider a request to override the risk level the Department assigned Jessep. *See* TEX. CODE CRIM. PROC. ANN. art. 62.007(d). Accordingly, we conclude the trial court erred by dismissing his claim for that relief on jurisdictional grounds.

The trial court also granted the defendants' motion for summary judgment on his request for declaratory relief, and ordered that Jessep take nothing on his claims for declaratory judgment. We have found that action was proper as to such claims aimed at a money judgment. To the extent, however, that the trial court granted summary judgment on requests for declaratory relief necessary to accomplish adjudication of his plea for correction of his risk assessment level, it erred.

---

[9] "WHEREFORE Plaintiff prays that this honorable court: . . . Issue an order for permanent and the total removal of illegally placed risk assessment notation appearing on Plaintiff's sex offender record."

Conclusion

We sever Jessep's request to have his assigned risk-level overridden, and any related requests for declaratory relief, into case number 07-18-00274-CV. We reverse the trial court's judgment dismissing those claims and remand case number 07-18-00274-CV to the trial court for further proceedings. Otherwise, we affirm the judgment of the trial court.

James T. Campbell
Justice