# Supreme Court of Texas

No. 23-0933

City of Buffalo and Jerrod Jones,

*Petitioners*,

v.

Gregory Moliere,

*Respondent*

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

**PER CURIAM**

The Buffalo City Council voted to terminate the employment of a police officer who violated police department policy. The officer, believing the City Council lacked authority to fire him, sued. The trial court dismissed the suit, but the court of appeals reversed and remanded, concluding that a fact issue existed as to whether the City Council had authority to terminate the officer. The question of whether the City's governing body had authority to fire the officer is a question of law that we answer in favor of the City Council. We therefore grant the petition for review and reverse the court of appeals' judgment. But because the court of appeals did not address whether the officer alleged

a valid due process claim against the members of the City Council, we remand the case to that court for further proceedings.

## I

Gregory Moliere worked as a police officer with the City of Buffalo Police Department. Although department policies prohibited doing so, Moliere engaged in a high-speed chase while a civilian was riding along in his patrol vehicle. The chase resulted in an accident that damaged the patrol vehicle. Moliere reported the accident to the City's Chief of Police, who issued Moliere a written reprimand. Moliere did not appeal the reprimand; he accepted and signed it.

About two weeks later, during a regularly scheduled meeting, the City Council met in closed session to discuss Moliere's employment. The City Council then reconvened in open session and voted to terminate Moliere.

Moliere sued, seeking a declaration that the City Council acted without authority and a judgment compelling his reinstatement. In addition, Moliere alleged that the City Council's action "deprived his limited due process" under the City's policies and procedures.[1] Moliere's live petition named as defendants the City of Buffalo; the City's mayor, Jerrod Jones; and the members of the City Council in their official and individual capacities. The City Council members apparently were never

---

[1] Moliere also alleged that the defendants "intentionally and knowingly acted without statutory or legal authority to wrongfully terminate (interfere with) the employment relationship existing between the Buffalo Police Department and [Moliere]." To the extent this allegation states a separate claim for tortious interference (or something else), Moliere did not appeal its dismissal.

served and never appeared in the trial court. But the City and Jones answered and filed a combined plea to the jurisdiction and motion for summary judgment. The trial court granted the combined plea and motion and dismissed all claims against the City and Jones. Additionally, finding that the City Council had authority to terminate Moliere, the trial court sua sponte dismissed Moliere's claims against the City Council members for want of jurisdiction and rendered a final judgment that Moliere take nothing.

Moliere appealed, and a divided court of appeals reversed. ___ S.W.3d ___, 2023 WL 6307992, at *7 (Tex. App.—Waco Sept. 28, 2023). The court held that a fact issue existed as to whether the City Council had authority to fire Moliere. The court noted that, although the City Council passed an ordinance providing that "City Council shall approve the appointment/hiring of all city police officers," it had not passed an ordinance expressly addressing the "termination" of those officers. *Id.* at *5. The court then concluded the City's employee manual and the police department's policy-and-procedure manual were ambiguous regarding the City Council's authority to terminate police officers. *Id.* at *6-7. The court thus remanded the case to the trial court for further proceedings, *id.* at *7, without addressing Moliere's distinct contention on appeal that he asserted a valid claim for violation of his due process rights. The City and Jones petitioned for review.

**II**

The City of Buffalo is a Type A general-law municipality. *See* TEX. LOC. GOV'T CODE §§ 5.001-.005 (distinguishing between Type A, B, and C general-law municipalities, home-rule municipalities, and

3

special-law municipalities).  General-law municipalities "are political subdivisions created by the State and, as such, possess [only] those powers and privileges that the State expressly confers upon them." *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016) (alteration in original) (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004)).  Most of those powers are granted through various provisions in the Local Government Code.  *See id.*

Local Government Code Section 341.001 governs the creation and regulation of the City's municipal police force.  Relevant here, that statute states:

> (a)    The governing body of a Type A general-law municipality may establish and regulate a municipal police force.
>
> (b)    The governing body by ordinance may provide for the appointment of police officers the governing body considers necessary and for the terms of office and qualifications of the officers.
>
> (c)    The governing body by ordinance may provide that the police officers serve at the pleasure of the governing body.

TEX. LOC. GOV'T CODE § 341.001(a)-(c).  The parties agree that the City Council is the governing body of the City of Buffalo.  *See* TEX. GOV'T CODE § 312.011(4) ("'Governing body,' if used with reference to a municipality, means the legislative body of a city, town, or village, without regard to the name or title given to any particular body.").  Thus, Section 341.001(a) unquestionably establishes the City Council's authority to "establish and regulate" the City's police force.  And subsections (b) and (c), together with the ordinance requiring the City

4

Council's approval of the hiring of all officers, confirm more specifically the City Council's authority to supervise officer hiring and employment requirements.

The City of Buffalo and its officials enjoy governmental immunity, a form of sovereign immunity, which protects them from lawsuits and liability for money damages. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008) ("Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts. However, both types of immunity afford the same degree of protection . . . ." (citation omitted)). But governmental immunity is not implicated if a party properly pleads an ultra vires claim against government actors in their official capacities. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373-74 (Tex. 2009). A valid ultra vires claim alleges that government officials—in this case, the individual members of the City Council—acted outside their authority. *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016); *see also Heinrich*, 284 S.W.3d at 372 (concluding that to state an ultra vires claim, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act").

### III

Moliere argues that the City Council lacks authority to terminate a police officer because, under his theory, the police chief is the only person authorized to hire or fire a police officer unless and until the City

Council adopts an ordinance giving itself the authority to do so. And Moliere contends no statute or ordinance authorizes the City Council to terminate his employment. We disagree. Moliere's reading of Local Government Code Section 341.001 would vitiate the City Council's express authority to "regulate" the police force, as that term is defined both now and at the time this statute was enacted. *See Regulate*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (defining "regulate" as "to govern or direct according to rule"); *Regulate*, BLACK'S LAW DICTIONARY (1st ed. 1891) ("The power to regulate . . . is the power to prescribe the rules by which it shall be governed, that is, the conditions upon which it shall be conducted . . . ."). And it largely ignores the import of subsections (b) and (c), which emphasize that the Legislature delegated to the City Council authority to oversee *the particulars* of officer hiring and conditions of employment.

Take Section 341.001(a). It confers upon the City Council the power to "establish and regulate a municipal police force." TEX. LOC. GOV'T CODE § 341.001(a). We have held that an express legislative grant of authority confers implied powers reasonably necessary to carry out the conduct expressly authorized. *See Hartzell v. S.O.*, 672 S.W.3d 304, 311-12 (Tex. 2023) (holding that state agencies can exercise powers "expressly conferred upon [them] and those implied powers that are reasonably necessary to carry out [their] statutory duties" (alterations in original) (quoting *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017))); *Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001) ("[A]n agency may also have implied powers that are reasonably

6

necessary to carry out the express responsibilities given to it by the Legislature."). Here, the authority to terminate a police officer could reasonably be implied from Section 341.001(a)'s express grant of power to "regulate" the police force. Subsections (b) and (c) further illuminate the point. Whereas subsection (a) grants the City Council general powers to "establish and regulate" the police force, subsections (b) and (c) enumerate some particulars the City Council may dictate, including the police force's size, the officers' necessary qualifications, and the terms for and on which officers may be employed.

Like Moliere, the court of appeals concluded that the City Council lacked authority to fire police officers unless it had passed an ordinance under subsection (c) that specifically authorized "termination." This was a misreading of subsection (c), which on its face does not apply to *all* terminations. Instead, a municipality that adopts an ordinance authorized by subsection (c) may fire officers without cause or for any reason at all (or, at least, any reason not otherwise prohibited by law)— that is what it means to "serve at the pleasure of the governing body." TEX. LOC. GOV'T CODE § 341.001(c). Even assuming that a municipality may not fire officers *without* cause absent an ordinance under subsection (c), it hardly follows that a termination *for* cause is similarly restricted. To the contrary, firing an officer because he has violated official policy or otherwise has demonstrated a performance-related deficiency is necessarily part of subsection (a)'s express authorization of "regulat[ing] a municipal police force." *Id.* § 341.001(a). Authority to fire officers without cause requires different power, and that is what subsection (c) provides.

7

Considering the whole of Section 341.001, together with the ordinance *requiring* the City Council's approval of the appointment/hiring of all city police officers, we conclude the City Council was authorized to terminate Moliere's employment. We hold that the court of appeals erred in requiring a more particular grant of authority than the one already plainly present in the statute and in concluding that there was a fact issue as to whether the City Council had authority to terminate Moliere. Moliere cannot dispute that he had been subjected to discipline for conduct that could have exposed the municipality to substantial liability; he did not contest it. At least under Section 341.001, the City Council had the authority to respond as it did.

Because the City Council had authority to terminate Moliere, Moliere has not properly pleaded an ultra vires claim. The trial court therefore properly dismissed Moliere's claim based on the City Council members' governmental immunity. *See Heinrich*, 284 S.W.3d at 372. We reverse the court of appeals' judgment and reinstate the trial court's judgment dismissing Moliere's claims against all defendants to the extent those claims are based on an alleged lack of authority to fire Moliere.

## IV

We agree with the trial court's conclusion that the City Council had authority to terminate Moliere and, therefore, voting to fire Moliere was not itself an ultra vires act on the part of any individual City Council member. The City Council was authorized to, and did, terminate Moliere for his undisputed violation of city policy. But Moliere separately asserted that the City Council violated his due process rights

8

by failing to follow the disciplinary procedures in the police department's policy manual as well as the statutory process governing complaints against law enforcement officers. *See* TEX. GOV'T CODE §§ 614.021-.023 (outlining certain procedures for handling complaints against police officers); *see also Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019) ("[G]overnmental immunity does not bar a suit that seeks to bring government officials into compliance with statutory or constitutional provisions.").

The trial court dismissed all of Moliere's claims, including his due process claim, and Moliere separately complained of the dismissal of that claim on appeal. But the court of appeals did not reach that issue. We therefore remand this case to the court of appeals for further proceedings with respect to Moliere's due process claim. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 869-70 (Tex. 2023) ("[A]s a prudential matter, the law is typically better served when the lower courts review a legal issue before this Court does.").

## V

For the foregoing reasons, and without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant the petition for review, reverse the judgment of the court of appeals, and remand the case to the court of appeals for further proceedings.

**OPINION DELIVERED:** December 13, 2024