# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00439-CV

---

**Appellant, Marsha McLane, in her Official Capacity as Director of the Texas Civil Commitment Office // Cross-Appellants, Eric Thomas, John Williams, and Albert Mailhot**

**v.**

**Appellees, Eric Thomas, John Williams, and Albert Mailhot // Cross-Appellee, Marsha McLane, in her Official Capacity as Director of the Texas Civil Commitment Office**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000239, THE HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

These cross-appeals challenge a district court's order sustaining in part and overruling in part a plea to the jurisdiction filed by the Director of the Texas Civil Commitment Office. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing interlocutory appeal). The district court overruled the plea with respect to the claims brought pursuant to the Administrative Procedures Act (APA), Tex. Gov't Code §§ 2001.038, .171, but sustained the plea with respect to "all other" claims. We will affirm in part, reverse in part, and render judgment dismissing the claims against the Director.

## BACKGROUND

In a series of otherwise unrelated proceedings in 2013 and 2014, a district court ordered Eric Thomas, John Williams, and Albert Mailhot (collectively, Appellees) to civil commitment in the custody of the Texas Civil Commitment Office and/or its predecessor.[1] Following those proceedings, Appellees were allegedly ordered to undergo outpatient treatment in what they describe as a "halfway house" near Houston, Texas. They allege that during this period of confinement they were allowed to leave the premises, use public transportation, entertain visitors, accept certain federal benefits, receive gifts, pursue gainful employment, etc.

In 2015, the Texas Legislature amended chapter 841 to revise the procedures by which the State classifies individuals as sexually violent predators and the conditions of any resulting court-ordered confinement. *See generally* Act of May 21, 2015, 84th Leg. R.S., ch. 845, § 4, 2015 Tex. Gen. Laws 2701–712 (now codified as further amended in scattered sections of chapter 841 of the Health and Safety Code). This statute imbues the Office with exclusive authority to determine where committed individuals will live and to develop a "tiered program for the supervision and treatment of a committed person." *See* Tex. Health & Safety Code §§ 841.082, .0831(a). The statute also holds committed individuals, if not indigent, responsible for the cost of housing and treatment. *See id.* § 841.084. The Legislature's intent, Appellees allege, was to allow individuals in civil custody to graduate from more restrictive to less restrictive tiers of confinement until fully rehabilitated. *Cf. id* § 841.0834 (governing "movement between programming tiers"). The amended statute applies to any civil commitment proceeding initiated on or after June 17, 2015.

---

[1] *See* Tex. Health & Safety Code §§ 841.001–.153 (setting forth commitment procedures for allegedly sexually violent predators); Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 1, sec. 4, 2015 Tex. Gen. Laws 2701, 2701 (renaming the Office).

In September and October of 2015, the Director obtained amended commitment orders placing Appellees in the tiered-treatment program. At some point thereafter, the Office moved Appellees—along with nearly 200 others similarly classified—to a facility known as the Texas Civil Commitment Center, which is located near Littlefield, Texas. The Center, a former state penitentiary, is now operated by Correct Care, LLC, and is used exclusively for the treatment of individuals confined under Chapter 841 of the Health and Safety Code.

Unhappy with the change from outpatient to inpatient treatment, Appellees sued the Director to challenge various procedures used to introduce the new tiered-treatment program and subsequently named the Office and Correct Care as co-defendants. Appellees complain that they cannot leave the Center, cannot receive guests, have been rendered ineligible for certain federal benefits, and have no means of obtaining gainful employment. They also allege that the Office garnishes or otherwise recovers one-third (33⅓%) of the value of any income, gifts, or supplies they receive. Essentially, Appellees contend that while the name of this facility has changed, it still functions as a penitentiary.

After amending their petition for relief eight times, Appellees now primarily rely upon the APA, *see* Tex. Gov't Code § 2001.038, and ultra vires theories, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–80 (Tex. 2009), as the bases for their claims. Specifically, they allege the Director violated the APA by promulgating existing rules improperly, by adopting "unwritten rules" that she should have promulgated, and by promulgating rules that interfere with existing legal rights. *See* Tex. Gov't Code § 2001.171(a). They also plead ultra vires claims arising from the Director's adoption of regulations that they allege violate constitutional and statutory rights. As redress for these alleged infractions, Appellees seek declaratory and injunctive relief, a writ of mandamus, and damages.

3

The Director filed a plea to the jurisdiction in response to each of the nine petitions for relief. In her live plea, she argues that Appellees have not identified any rules subject to review under the APA and have not alleged any ultra vires act. The district court accepted the latter argument but rejected the former, sustaining in part and overruling in part the plea:

> It is ordered, adjudged, and decreed, that McLane's Plea to the Jurisdiction is DENIED as to Plaintiff's claims under the Texas Administrative Procedure Act.
>
> It is further ordered, adjudged, and decreed, that McLane's Plea to the Jurisdiction is GRANTED in all other respects.

The Director timely perfected this appeal,[2] and Appellees filed timely cross-appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007). Appellees filed a request for findings of fact and conclusion of law, which the district court denied. The parties executed an agreement under which Appellees will undergo "treatment in the same manner as was provided to them prior to September 15, 2015," until this appeal is resolved.

## STANDARDS OF REVIEW

As an administrative agency of the State, the Office benefits from sovereign immunity from suit, which deprives the courts of jurisdiction unless the State expressly consents to the suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A waiver of sovereign immunity must be clear and unambiguous. *See* Tex. Gov't Code § 311.034;

---

[2] Although Correct Care filed a plea to the jurisdiction adopting the arguments made in the Director's plea to the jurisdiction, the district court did not address the claims against Correct Care in its order disposing of the Director's plea. Neither Correct Care nor the Office is party to this appeal.

4

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). "It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" *Miranda*, 133 S.W.3d at 224 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, when a state official files a plea to the jurisdiction, the official may invoke the sovereign immunity held by the government itself. *Koseoglu*, 233 S.W.3d at 844.

"[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action"—as is the case here—"and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* at 226 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). In making this determination, "[w]e construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at

5

226–27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227. As with other jurisdictional issues, we review a defense of sovereign immunity de novo. *Id*. at 226, 228.

## DISCUSSION

We begin by emphasizing the relatively narrow basis of Appellees' challenge to their commitment. Appellees stipulate that they "do not challenge the authority of the 435th District Court . . . to enter the orders entered [sic] in 2015 placing them on the tiered treatment program." Nor do they raise an as-applied or facial challenge to the statute itself. Instead, Appelles challenge certain rules promulgated pursuant to the statute and other informal policies allegedly used to execute that statute, which requires the Office and its director to promulgate rules "consistent with the purposes of th[e] chapter." *See* Tex. Health & Safety Code § 841.141.

In the five briefs filed in these cross-appeals, the parties have articulated the issues before the Court in various ways. For convenience and brevity, we will consolidate and summarize these points for discussion. *See* Tex. R. App. P. 47.1 (requiring courts of appeals to render opinions "as brief as practicable"). First, Appellees contend the district court erred by declining to file findings and conclusions. Second, the Director contends the district court erred by denying her plea to the jurisdiction with respect to Appellees' claims under the APA. Third, Appellees challenge the district court's dismissal of their ultra vires claims that the Director failed to promulgate additional rules and that existing rules and polices violate their constitutional and statutory rights.

6

**Findings and Conclusions**

Appellees first challenge the trial court's order denying their motion requesting findings of fact and conclusions of law. Texas Rule of Civil Procedure 296 provides, "In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." *See* Tex. R. Civ. P. 296. A trial court must file its findings and conclusions in such cases. *See id*. R. 297. The present matter, however, is before this Court on interlocutory review of the district court's disposition of a plea to the jurisdiction. Trial courts may, but need not, grant a motion for findings and conclusions in support of an interlocutory order. *See Humble Expl. Co. v. Fairway Land Co.*, 641 S.W.2d 934, 937 (Tex. App.—Dallas 1982, writ ref'd n.r.e); *Bailey Empl't Serv., Inc. v. Moore*, 638 S.W.2d 641, 642 (Tex. App.—Waco 1982, no writ). In their argument on this issue, which consists of a single paragraph, Appellees have not identified any authority supporting the contention that the district court "should have" rendered findings of fact and conclusions of law. We therefore overrule the issue.

**APA Claims**

The Director contends the district court erred by overruling the plea to the jurisdiction with respect to Appellees' APA claims, arguing that these claims fail as a matter of law.[3] The APA waives sovereign immunity for parties seeking determination of "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."

---

[3] The Director also argues that a rule challenger may only bring an APA claim against the agency—and not an official. *See* Tex. Gov't Code § 2001.038(c). ("The state agency must be made a party to the action."). Because these claims fail as a matter of law, we will assume without deciding that the Director is a proper defendant to a claim brought under the APA.

7

*See* Tex. Gov't Code § 2001.038(a), .171.  The APA requires notice-and-comment promulgation of any agency rule.  *See id.* § 2001.004.  Rule is defined as:

> (A)   a state agency statement of general applicability that:
>
>> (i)  implements, interprets, or prescribes law or policy; or
>>
>>> (ii)  describes the procedure or practice requirements of a state agency;
>
> (B) includes the amendment or repeal of a prior rule; and
>
> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

*See id.* § 2001.003(6).  This definition is drafted "in a way that will exclude a considerable range of unofficial, individually directed, tentative, or other non-proscriptive agency or staff issuances concerning law or policy."  *Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 622 (Tex. App.—Austin 2014, pet. denied).

Appellees challenge a variety of rules and policies that we will group into three categories for discussion.  First, Appellees challenge certain "unwritten rules" that the Office allegedly uses to operate the Center, arguing that the Office or its Director must promulgate these policies under the APA.  *See* Tex. Gov't Code §§ 2001.021–.041 (setting forth promulgation requirements).  Second, Appellees contest promulgated rules that allegedly "merely restate[] a provision" of the statute itself, arguing that those rules are invalid.  *See id.* § 2001.038(a).  Third, they challenge promulgated rules that they allege violate or impair existing legal rights.[4]  We will address these challenges in turn.

---

[4]  *See* Tex. Gov't Code § 2001.038(a).  Appellees challenge all rules promulgated under the statute, arguing that the Director impermissibly allowed the Office's board of directors, rather than the Office itself, to promulgate the rules.  But the Legislature vested governance of

8

*"Unwritten Rules"*

Appellees first complain of certain policies and procedures, which they refer to as "unwritten rules," that they allege the Office, its Director, and Correct Care use as part of the tiered-treatment program and that they maintain must be promulgated pursuant to the APA's notice-and-comment requirements. The challenged policies and procedures include:

- that the Office has "surrender[ed]" to Correct Care "unbridled authority over all aspects of the [Appellees'] existence," including the "unbridled authority to adopt, enforce, and change, without notice, rules for which [Appellees] can be disciplined";

- that the Office includes "all money and property (except hand-me-down clothing or used books) that a[n Appellee] receives" as income when calculating the required contribution to the cost of treatment; and

- that the Office allows Correct Care "to deprive [Appellees] of medical care."

None of these allegations gives rise to a viable APA claim.

With respect to the first complaint, Appellees allege that this "unwritten rule" was not validly promulgated. But the Office in fact promulgated a rule regarding the outsourcing of treatment, *see* 37 Tex. Admin. Code § 810.153(3) (2018) (Tex. Civil Commitment Office[5]) (Tiered Treatment and Supervision Program) ("The [O]ffice shall enter into appropriate contracts or memoranda of understanding for the provision of any necessary supervised housing and other related services."), and Appellees have not alleged any anomalies in that promulgation.

the Office in "a board composed of five members," *see* Tex. Gov't Code § 420A.002(b), and Appellees have waived this argument on appeal by failing to provide any supporting law or otherwise explain how the board of directors lacks the statutory authority to promulgate rules on behalf of the Office, *see* Tex. R. App. P. 38.1; 38.2.

[5] Unless otherwise indicated, all cited rules were proposed and promulgated by the Texas Civil Commitment Office.

9

The second challenged "unwritten rule" is the Office's alleged policy of including the value of any gifts or new merchandise received by an Appellee as "income" when calculating the amount of money he must contribute toward the cost of housing and treatment. As evidence, Appellees produced the following email sent from a civil commitment manager to case managers:

**Subject:** Enforcement of policy concerning packages and cost recovery

It has come to our attention that SVP Clients[6] are utilizing their package allowances and family packages to circumvent cost recovery requirements and are receiving hundreds of dollars of goods from vendors through their family. Going forward, all packages require the approval of the case manager prior to their release to the SVP Client. Clients seeking a vendor package to be ordered for them by family members must provide a cost list to the case manager prior to the package being ordered. Upon receipt of the gift package, the packing slip must be provided to the Case Manager to verify that the items in the package are those that were approved and that the client is current on cost recovery to include 33% of the value of the gift being received. The 33% does not include items such as hand me down clothing or books sent directly from an approved contact within property allowances and tiered housing policy. Packages being ordered by a SVP client, current on his cost recovery, using his resident account funds from a vendor will continue to be handled in the same manner as they have been.

Appellees contend this cost-recovery policy constitutes an ad hoc rule, but "an informal agency statement that merely restates formally promulgated rules" does not give rise to an APA claim. *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 121 (Tex. App.—Austin 2017, pet. denied) (quoting *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 703 (Tex. App.—Austin 2011, no pet.)); *see also Teladoc*, 453 S.W.3d at 614–22; *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 533–34 (Tex. App.—Austin 2014, pet. denied); *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 769–71 (Tex. App.—Austin

---

[6] The Office and Correct Care refer to individuals undergoing treatment at the Center as their "clients" or "residents." All spelling, grammar, and punctuation reflect those in the email.

10

1999, no pet.). The announcement in the manager's email does not give rise to an APA claim because it merely reflects a policy the Director promulgated through notice-and-comment rulemaking. *See* 42 Tex. Reg. 7565, 7566 (2017) (codified at 37 Tex. Admin. Code § 810.122) (proposed Dec. 29, 2017) (definitions); *Texas Dep't of Transp. v. Texas Weekly Advocate*, No. 03-09-00159-CV, 2010 WL 323075, at *2 (Tex. App.—Austin Jan. 29, 2010, no pet.) (mem. op.) (rejecting an ad-hoc-rulemaking challenge to agency policy where agency had adopted that policy pursuant to APA's promulgation procedures); *LMV-AL*, 520 S.W.3d at 122.

The statute requires that all individuals adjudicated as sexually violent predators initially undergo inpatient treatment and provides, "[A] civilly committed person who is not indigent is responsible for the cost of housing and treatment." *See* Tex. Health & Safety Code § 841.084 (punctuation revised). In accordance with that statutory requirement, the Office promulgated a rule indicating that it would "set forth the method of payment for the cost recovery" but would not require "payment in an amount that exceeds 50% of the income of the committed person or the actual cost of the service." *See* 37 Tex. Admin. Code § 810.273. The Office promulgated a separate rule providing, "For the purpose of recovery of costs . . . a sexually violent predator is considered to be indigent if the sexually violent predator does not have any income" and then defined income to include "wages, salaries, tips, and other taxable employee pay, disability benefits, net earnings from self-employment, funds received from the sale of property, funds received as an inheritance, interest or dividend income, retirement income, social security income, unemployment benefits, *and gifts.*" *See id.* § 810.122 (emphasis added). Thus, the email simply reflects the Office's decision to interpret the statutory reference to "income" as including the value of any gifts received—whether directly from family or from an online vendor—in the calculation of monthly income. Because the statements in the email

11

summarize the substance of the rule promulgated, they do not generate a fact issue sufficient to establish jurisdiction under the APA. *See Texas Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 579 (5th Cir. 1996); *Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass Clubs*, 622 S.W.2d 594, 596 (Tex. App.—Austin 1981, writ ref'd n.r.e.).

With respect to the third complaint—that the Office uses an unpromulgated rule to systematically deprive Appellees of medical care—Appellees have not produced any evidence the alleged "rule" exists. To the contrary, the statute requires the Office to provide medical care, *see* Tex. Health & Safety Code § 841.083(d), and the Director's affidavit indicates that Appellees "have access to medical care at the facility and [will] be referred outside the facility for any specialist or emergency care that cannot be handled at the facility." Appellees have not alleged any incidents or otherwise identified any "unwritten rule" to the contrary. Without an alleged rule to challenge, Appellees cannot establish the district court's jurisdiction under Section 2001.038 the APA. *See Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 905 (Tex. App.—Austin 2009, no pet.).

*Regulations that "Merely Restate the Provisions" of the Statute*

Appellees contend that Rules 810.151 and 810.153 "do[] not meet the definition of a rule[,] as [they] merely restate[] a provision of Health and Safety Code Chapter 841," and that the Director therefore violated the APA in promulgating and enforcing those rules. *See, respectively*, 37 Tex. Admin. Code §§ 810.151 (Administration of the Act), .153 (Tiered Treatment and Supervision Program). Rule 810.151 requires the Office to "provid[e] appropriate and necessary treatment" and to "hire or contract for the services of" appropriate professionals. *See* 37 Tex. Admin. Code § 810.151. This language is similar to that found in Section 841.007 of

12

the statute. *See* Tex. Health & Safety Code § 841.007(1). Rule 810.153 requires the Office to "develop a tiered program policy for the supervision and treatment of a committed person" and to "provide for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision . . . ." *See* 37 Tex. Admin. Code § 810.153(1). These provisions track language found in Section 841.0831 of the statute. *See* Tex. Health & Safety Code § 841.0831(b).

Appellees provide no authority for their assertion that a regulation that tracks statutory language cannot satisfy the requirements of the APA. Nor could they cite such authority. As this Court has explained, where a rule "merely restates the unambiguous meaning of a preexisting rule or statute," any "claims under Section 2001.038 are barred by sovereign immunity." *Texas Alcoholic Beverage Comm'n v. D. Hous., Inc*., No. 03-13-00327-CV, 2017 WL 2333272, at *3 (Tex. App.— May 25, 2017, pet. denied) (mem. op.) (citing *LMV-AL*, 520 S.W.3d at 125; *Sunset Transp.*, 357 S.W.3d at 704); *see also Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (holding that "section 2001.038 does not carry [plaintiff's] claim over the hurdle of sovereign immunity" when plaintiff challenges procedures established by statute). Because these arguments fail as a matter of law, the Director retains immunity from suit with respect to this claim. *See Transformative Learning Sys. v. Texas Educ. Agency*, 572 S.W.3d 281, 293 (Tex. App.—Austin 2018, no pet.).

### *Regulations that Violate Existing Legal Rights*

Appellees contend the district court has jurisdiction under the APA because the tiered-treatment regulations interfere with existing legal rights. *See* Tex. Gov't Code § 2001.038. Specifically, Appellees allege that Rules 810.153 and 810.273 violate their alleged

13

right to outpatient treatment, their First Amendment rights to freedom of assembly and expression, and their constitutional rights to due process and due course of law. *See* 37 Tex. Admin. Code § 810.153 (Tiered Treatment and Supervision Program), .273 (Cost of Housing Treatment, and Tracking Services). Although Appellees' briefing on these claims does not comply with appellate briefing standards, *see* Tex. R. App. P. 38.1, 38.2(a)(1), we will address the arguments preserved at the district court and presented on appeal to the extent we can construe them.

Appellees contend that by requiring "total confinement" via inpatient treatment at the Center, rather than outpatient treatment at a "halfway house," Rule 810.153 infringes on an allegedly vested right to outpatient treatment. That rule requires "the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision . . . ." *See* 37 Tex. Admin. Code. § 810.153(1). The source of the alleged right to outpatient treatment is not clear from Appellees' briefing. Appellees have already stipulated that they no longer challenge the 2015 orders recommitting them under the amended version of the statute. Specifically, they aver, "Plaintiffs do not challenge the judgment ordering them into Chapter 841 commitment, the Orders of Commitment or the orders placing them in the tiered treatment [sic] program." Moreover, federal and state courts have already rejected the notion of a general constitutional, statutory, or common law right to outpatient civil commitment. *See Hitt v. McLane*, No. A-17-CV-289-SS, 2018 WL 773992, at *14 (W.D. Tex. Feb. 7, 2018) (gathering authorities from the Supreme Court of the United States before rejecting challenge to 2015 amendments to this statute); *Richards v. Taylor*, No. CIV.A. H-13-1394, 2015 WL 5310853, at *2 (S.D. Tex. Sept. 11, 2015) (rejecting challenge to transition to tiered treatment by explaining, "[M]odification of the terms of an SVP's commitment order is consistent with the proviso

14

already a part of the [pre-amendment] statute that authorized modifications as part of the biennial review process." (citing Tex. Health & Safety Code § 841.102(c)(1))); *In re Brown*, No. 09-18-00428-CV, 2018 WL 6369713, at *1 (Tex. App.—Beaumont Dec. 6, 2018, no pet.) (mem. op.) (rejecting similar argument before denying mandamus relief).

Appellees further allege that Rule 810.153 and other regulations infringe on their rights to assembly and expression as set forth in the United States and Texas constitutions.[7] The First Amendment to the United States Constitution guarantees that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The prohibition on any interference with these rights was extended to state governments via incorporation through the Fourteenth Amendment, and the Texas Constitution independently affords similar protections to all Texans. *See id.* amend. XIV; Tex. Const. art. I, §§ 8, 27. Appellees allege that the Rule's requirement of "total confinement" interferes with these rights by preventing them from interacting with friends and family, restricting certain speech, and precluding free movement within the community. But as the Fifth Circuit has explained, in the context of involuntary civil commitment, First Amendment restrictions "are permissible so long as they advance the state's

---

[7] Appellees' live petition also alleges that this rule interferes with their right to vote, *see* U.S. Const. amends. XIV, XXIV; Tex. Const. art. VI, §§ 1–2, *and* Tex. Elec. Code § 11.002(a)(4), but Appellees have not briefed this Court on the allegation. We therefore do not reach that issue. Tex. R. App. P. 38.1, 38.2; *see also Texas Med. Ass'n v. Texas Workers Comp. Comm'n*, 137 S.W.3d 342, 351 (Tex. App.—Austin 2004, no pet.) ("All waivable errors not included in the original appellate brief are waived and present nothing for review." (referring to constitutional arguments raised below but not included in appellate briefing)); *cf. Matzen v. McLane*, 764 F. App'x 402, 402–03 (5th Cir. 2019) (observing, before affirming Rule 12(b)(6) dismissal of First Amendment challenge to inpatient treatment, that individual confined at Texas Civil Commitment Center had voted in 2016 general election).

interest in security, order, or rehabilitation." *Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013); *see also Matzen v. McLane*, 764 F. App'x 402, 402–03 (5th Cir. 2019) (rejecting First Amendment challenge to the same statutory scheme at issue here); *Hitt*, 2018 WL 773992, at *17 (rejecting First Amendment challenge to earlier version of statute). Any rational relation to the state's interest suffices to justify the challenged regulation. *See Bohannan*, 527 F. App'x at 294. Here, Appellees do not explain how the Center's inpatient treatment and associated restrictions are unrelated to the state's interest in security, order, and rehabilitation. Because conclusory allegations are not sufficient to overcome sovereign immunity, *see City of El Paso v. Collins*, 440 S.W.3d 879, 886 (Tex. App.—El Paso 2013, no pet.); *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 808 (Tex. App.—Fort Worth 2008, no pet.), on this record Appellees cannot establish the district court's jurisdiction over a claim that the tiered-treatment regulations impair First Amendment rights.

For similar reasons, Appellees' claim that Rules 810.153 and 810.273 interfere with their rights to due process and due course of law also fails. The United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Texas Constitution guarantees that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. 1, § 19. "Though textually different, Texas courts generally construe the due course of law provision in the same manner as its federal counterpart, the Due Process Clause." *Lakey v. Taylor*, 435 S.W.3d 309, 317 (Tex. App.—Austin 2014, no pet.) (citing *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004)). "Where, as here, the parties have not argued that differences in state and federal constitutional guarantees are material to the case, and

16

none is apparent, we limit our analysis to the United States Constitution and assume that its concerns are congruent with those of the Texas Constitution." *In re Commitment of Fisher*, 164 S.W.3d 637, 645 (Tex. 2005) (citing *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 150 (Tex. 2004)).

The right to due process includes both procedural and substantive components. "Procedural due process involves the preservation of both the appearance and reality of fairness so that 'no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed against him.'" *Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex. App.—Austin 1992, writ denied) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). "Procedural due process expresses the fundamental idea that people, as opposed to things, at least are entitled to be consulted about what is done to them." *Id.* (citing Laurence H. Tribe, *American Constitutional Law* § 10–7, at 666 (2d ed. 1988)). In several of the nine iterations of their petition for relief, Appellees challenged the 2015 hearings that resulted in their transfer to tiered treatment under the amended version of the statute, arguing that they had not been afforded due process in those proceedings. *Cf. In re Commitment of May*, 500 S.W.3d 515, 526 (Tex. App.—Beaumont 2016, pet. denied) (rejecting procedural challenge to similar recommitment hearing). As noted above, Appellees have now expressly abandoned any challenge to those 2015 commitment orders, and Appellees have not articulated any other procedural due process argument. Thus, looking to the allegations, the record, and the pleaders' intent, *see Miranda*, 133 S.W.3d at 226–28, we conclude the district court did not err in sustaining the plea with respect to any procedural due process claim.

Appellees' substantive due process theory is not entirely clear. They complain of the statutory and regulatory requirement that sexually violent predators contribute to the cost of

17

housing and treatment, *see* 37 Tex. Admin. Code § 810.273; the agency's definition of indigency, *see id.* § 810.122(6); and an alleged disciplinary policy providing that individuals who refuse to comply with cost-recovery requirements will not progress to less restrictive tiers of confinement. Appellees fear that the Director might use these rules and policies to unlawfully "extort payment" from indigent individuals or to transfer someone from less restrictive to more restrictive supervision if he refuses to allow this "extortion." Yet this kind of speculation is not sufficient to establish the district court's jurisdiction over the claim, as Texas courts have no "jurisdiction to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy." *See Trinity Settlement Servs., LLC v. Texas State Sec. Bd.*, 417 S.W.3d 494, 505 (Tex. App.—Austin 2013, pet. denied) (affirming district court's dismissal of APA challenge to agency's possible rule interpretation based on "hypothetical facts" (citing *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 130–31 (Tex. App.—Austin 2007, no pet.))).

Appellees further allege that by adopting a rule requiring them to remit part of their monthly income toward the cost of housing and treatment, Rule 810.273—when paired with the definitions set forth in Rule 810.122 and Office policy—might result in the unconstitutional deprivation of property. But the Director acknowledges that unless Appellees receive money or gifts, they are defined as indigent and her case workers may not enforce the cost-recovery policy against them, and Appellees do not allege that they have or expect to receive any income or other property that might render them non-indigent and therefore subject to this policy.[8] Thus, because conclusory allegations are insufficient to overcome sovereign

---

[8] We express no opinion on cases in which a sexually violent predator has alleged an actual or imminent deprivation of property.

immunity, and because we must assume administrative agencies intend their rules to be interpreted and applied constitutionally, *see Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.*, 784 S.W.2d 79, 85 (Tex. App.—Austin 1989, writ denied), we hold that Appellees did not satisfy their burden to establish the district court's jurisdiction over this APA claim.

Having concluded that the district court lacked jurisdiction over Appellees' APA claims, we sustain the Director's sole issue on appeal. We reverse the part of the district court's order overruling the plea to the jurisdiction with respect to those claims.

**Ultra Vires Claims**

Appellees challenge the district court's dismissal of their ultra vires claims. A government official's conduct is ultra vires when "he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *See Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). "[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *Heinrich*, 284 S.W.3d at 372. "To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See id.* A court has no jurisdiction over an ultra vires claim that fails as a matter of law. *Hall v. McRaven*, 504 S.W.3d 414, 419–20 (Tex. App.—Austin 2016), *aff'd*, 508 S.W.3d 232 (Tex. 2017).

Appellees' live petition includes ten enumerated paragraphs outlining dozens of ostensibly ultra vires acts by the Director. Many of these allegations involve breaches of the

19

same alleged ministerial duties.  Generally speaking, Appellees allege that the Director engaged in ultra vires conduct by:

- failing to promulgate rules on certain subjects;

- allowing the Office's board of directors to promulgate the rules necessary to administer the statute;

- denying Appellees adequate medical treatment;

- requiring Appellees to undergo inpatient treatment instead of outpatient treatment;

- threatening to recover certain sums or property from Appellees to defray the cost of treatment and housing; and

- interfering with their First Amendment rights to public assembly and personal expression.

To the extent Appellees intended to raise other allegations in support of an ultra vires theory, we hold those arguments waived as unpreserved or inadequately briefed.  *See* Tex. R. App. P. 33.1, 38.1, 38.2.

With respect to the allegation that the statute requires the promulgation of certain rules that were never promulgated, Appellees have not identified any subject that should have been addressed by rule but was not.  *See Pharmserv, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, at *7 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.) (holding, inter alia, that the plaintiffs had not alleged the violation of any ministerial duty that might give rise to an ultra vires claim arising from Health and Human Service Commissioner's decision not to promulgate certain rules).  The Legislature set forth the Office's rulemaking authority and obligations in the Office's organic statute:

20

The office shall adopt rules to:

(1) develop standards of care and case management for persons committed under this chapter;

(2) determine the conditions of supervision and treatment of a committed person; and

(3) develop and implement the tiered program described by Section 841.0831, including rules regarding a committed person's transition between programming tiers.

*See* Tex. Health & Safety Code § 841.141(b) (West 2016), *repealed by* Act of May 18, 2017, 85th Leg., R.S., ch. 34, § 40, 2017 Tex. Gen. Laws 72, 86. And more generally, all agencies must promulgate any "statement of general applicability" that "implements, interprets, or prescribes law or policy" affecting private rights or interests. *See* Tex. Gov't Code § 2001.003(6). The Director and the Office began promulgating the rules required by Section 841.141 of the Health and Safety Code shortly after the amended statute took effect and adopted those regulations in 2018. *See* 42 Tex. Reg. 7565, 7566 (2017) (codified at 37 Tex. Admin. Code § 810.122) (proposed Dec. 29, 2017). Because Appellees have not explained how the Director failed to perform a ministerial act in the promulgation of the agency's rules, Appellees cannot establish the district court's jurisdiction over their ultra vires claim.

We need not address Appellees' remaining ultra vires theories, as we rejected each of these arguments in our foregoing analysis of Appellees' claims under the APA. In absence of a viable ultra vires theory, Appellees have not met their burden to establish the district court's jurisdiction over the ultra vires claims, and the district court did not err in sustaining the Director's plea to the jurisdiction with respect to these claims. *See Heinrich*, 284 S.W.3d at 372; *McRaven*, 504 S.W.3d at 419–20. We overrule the issue.

**Repleading**

Having concluded that Appellees failed to establish the district court's jurisdiction over the claims against the Director, we turn to the only remaining question before this Court: whether the district court should afford Appellees an opportunity to amend their petition to plead new claims against the director. "[A] plaintiff must be given '"a reasonable opportunity to amend" his pleadings to attempt to cure the jurisdictional defects found' unless the pleadings are incurably defective." *Koseoglu*, 233 S.W.3d at 839 (quoting *Texas A&M Univ. Sys. v. Koseoglu*, 167 S.W.3d 374, 383 (Tex. App.—Waco 2005, pet. granted), and citing *Harris County v. Sykes,* 136 S.W.3d 635, 639 (Tex. 2004), and *Texas Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867–68 (Tex. 2002)). This opportunity is afforded "only if it is possible to cure the pleading defect." *Id*. at 840. "[T]he right to amend typically arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction." *Ramirez*, 74 S.W.3d at 867; *see also Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (dismissing rather than remanding for repleading where party failed to establish jurisdiction after pleading all jurisdictional facts but asked for remand "to plead new claims" in an attempt to establish the district court's jurisdiction over the dispute). In this case, Appellees have amended their petition eight times to include myriad factual allegations. Even after eight amendments, the alleged facts, when viewed in light of relevant precedent, give rise to no viable claim against the Director. Thus, in this case, as in *Marquez*, "the jurisdictional bar arises not from a lack of factual allegations but from the nature of the [plaintiffs'] claims." *Marquez*, 487 S.W.3d at 559. Because the record and governing law negate the existence of the district court's jurisdiction over the dispute, "remanding the cause to the trial court will serve no legitimate purpose,"

*Koseoglu*, 233 S.W.3d at 846, and we must render judgment dismissing Appellees' claims against McLane, *see id.*; *Marquez*, 487 S.W.3d at 559–60.

## CONCLUSION

Even reviewing this record in the light most favorable to Appellees, *Miranda*, 133 S.W.3d at 226, we conclude they have not established the district court's jurisdiction over their claims against the Director. Thus, and for the reasons stated herein, we reverse the district court's order to the extent it overrules the Director's plea to the jurisdiction as to Appellees' APA claim against her and affirm the district's court order in all other respects. We render judgment dismissing the claims against McLane.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith
  Concurring Opinion by Justice Goodwin

Affirmed in Part; Reversed and Rendered in Part

Filed:   March 6, 2020